UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES RAMSEY,

          Plaintiff,

                                        Case Number 08-10609
v.                                       Honorable David M. Lawson

CINDI CURTIN,

          Defendant.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, presently confined at the Oaks Correctional Facility in Manistee, Michigan, has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. The petitioner was convicted by a jury in the Wayne County, Michigan circuit court of first-degree murder, Mich. Comp. Laws § 750.316(1)(a), assault with intent to commit murder, Mich. Comp. Laws § 750.83, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. He was sentenced to concurrent prison terms of life without parole for the murder and ten to twenty years for the assault, plus a two-year consecutive term for the firearm conviction. He alleges that he is in custody in violation of the Constitution because the trial court incorrectly applied a procedural bar in denying the petitioner's motion for relief from judgment; his rights to present a defense and confront witnesses were violated when he was prevented from introducing evidence of the eye-witness's prior convictions; his right to confrontation was violated when a medical examiner who did not personally perform the autopsy of the victim was permitted to testify about the cause of death; the prosecutor committed misconduct during closing argument; the petitioner was denied the effective assistance of trial and appellate counsel; and the accumulation of these errors violated due process. The respondent filed an answer to the petition arguing that the petitioner's claims are

procedurally barred from review.  The Court finds that the petitioner's claims are not procedurally

barred, but they are without merit.  Therefore, the Court will deny the petition.

I.

The Michigan Court of Appeals described the facts of the case in its opinion on direct

review, which are presumed correct in this proceeding under 28 U.S.C. § 2254(e)(1).  *Wagner v.*

*Smith*, 581 F.3d 410, 413 (6th Cir. 2009).  That court stated:

> This case arises from the shooting death of James Cross.  On July 6, 2001, Cross was
> driving through Highland Park when he saw his friend, Marcellis Harris, driving a
> car that belonged to the passenger, Kyree.  Harris and Cross parked their vehicles
> near the curb, got out, and were standing in the street talking when a white Grand
> Prix pulled up next to them.  Harris identified defendant as the driver of the Grand
> Prix and Sean Jamar Ramsey, defendant's brother, as the occupant of the front
> passenger seat.  Harris also noticed a third unidentified man in the back seat.
>
> Harris saw that Sean Ramsey was pointing a gun at them, and he and Kyree hid
> behind their vehicle. Sean Ramsey fired gunshots from a revolver, and defendant
> fired gunshots from what appeared to be a nine millimeter handgun, extending his
> arm across the front seat past Sean Ramsey.  A total of three to five gunshots were
> fired, but nobody was hit.  The Grand Prix performed a U-turn and returned.
> Defendant fired his weapon from the driver's window, and Sean Ramsey fired
> gunshots across the hood of the vehicle while leaning out of the passenger window.
> Approximately ten to fifteen gunshots were fired, and the Grand Prix drove away.
> Cross sustained gunshot wounds to his left arm and abdomen, and died two days later
> as a result of the gunshot wounds.  Neither Kyree nor Harris was injured.
>
> Harris made a statement to the police after the shooting, but he admitted at trial that
> he had given false information because he intended to seek revenge on defendant and
> Sean Ramsey without police involvement.  He testified that he made a second police
> statement on August 10, 2001, and he identified defendant and Sean Ramsey as the
> shooters and explained his history with them.  Harris had known Sean Ramsey since
> 1989 and defendant for five years prior to the shooting. Approximately one or
> one-and-a-half years before the shooting Harris had a verbal argument with
> defendant.  Two or three months after the argument, Harris and defendant got into
> a fistfight in which Harris prevailed.  After the fistfight, Harris did not see Sean
> Ramsey or defendant again until the shooting.

*People v. Ramsey*, No. 245614, 2004 WL 1108625, at *1 (Mich. Ct. App. May 18, 2004).

-2-

On direct appeal, the petitioner raised three arguments: (1) there was insufficient evidence of premeditation and deliberation to sustain a conviction, (2) the trial court erred when it denied the petitioner's motion for directed verdict of acquittal, and (3) there was insufficient evidence presented at the preliminary examination to warrant a bindover. The Michigan Court of Appeals denied all three claims on the merits. The petitioner then filed an application for leave to appeal in the Michigan Supreme Court raising, in addition to the three claims raised before the Michigan Court of Appeals, claims of ineffective assistance of trial counsel, denial of due process right to present complete defense, denial of right to testify on his own behalf, and ineffective assistance of appellate counsel. The Michigan Supreme Court denied the petitioner's application for leave to appeal because it was "not persuaded that the questions presented should be reviewed . . . ." *People v. Ramsey*, 471 Mich. 922, 688 N.W.2d 830 (2004) (table).

The petitioner then filed a motion for relief from judgment in the trial court. Although the respondent did not include the motion for relief from judgment with the Rule 5 materials, the petitioner alleges, without refutation by the respondent, that he raised the same claims in this motion that he raised in a subsequent application for leave to appeal filed in the Michigan Court of Appeals. Those issues are identical to the claims made in the present habeas petition (save claim VIII), which are quoted in full below. The trial court denied the motion by opinion and order dated October 11, 2006. *People v. Ramsey*, No. 01-012708 (Wayne Cnty. Cir. Ct. Oct. 11, 2006). The Michigan Court of Appeals denied leave to appeal because the petitioner failed to "meet the burden of establishing entitlement to relief under Mich. Ct. R. 6.508(D)." *People v. Ramsey*, No. 276031 (Mich. Ct. App. July 26, 2007). The Michigan Supreme Court denied leave to appeal on the same grounds. *People v. Ramsey*, 480 Mich. 1043, 743 N.W.2d 876 (2008) (table).

-3-

The petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. The trial court committed plain and/or clear error, where the court erred in review of the factual claims raised in Defendant 6.500 motion which affected the court's review and [analysis] of [the petitioner's] case presented to the court.

II. The trial court violated [the petitioner]'s right to present his defense and to due process of law by suppressing evidence relating to defense theory that Mr. Harris committed the crime.

III. [The petitioner] was deprived of his constitutional right to confrontation when the actual medical examiner who performed the autopsy was not called to testify, and a supervisor was allowed to give testimony concerning the autopsy results and post mortem report.

IV. [The petitioner] was denied due process of law and a fair trial when the prosecutor made an improper closing argument.

V. The petitioner was denied the effective assistance of counsel, when defense counsel failed to investigate and interview "alibi" witnesses, and interfered with [the petitioner's] right to testify at trial.

VI. [The petitioner] was denied his constitutional right to effective assistance of counsel on his first appeal of right when appellate counsel "omitted" issues that were both obvious and significant and he failed to investigate the petitioner's assertions of an alibi that trial counsel failed to assert.

VII. The cumulative effect of the trial error deprived [the petitioner] of his constitutional right to a fair trial.

VIII. [The petitioner] is not procedurally barred from raising these issues and having them heard on the merits.

The respondent filed an answer in opposition.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See*

-4-

*Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).  Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

-5-

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409.  The Court has "explained that an unreasonable application of federal law is different from an incorrect application of federal law.  Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable.  This distinction creates a substantially higher threshold for obtaining relief than *de novo* review.  AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt."  *Renico v. Lett*, ---U.S. ----, ----, 130 S. Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached") (internal quotation marks and citations omitted); *see also Knowles v. Mirzayance*, --- U.S. ----, ----, 129 S.Ct. 1411, 1419 (2009) (noting that the Supreme "Court has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court" (*quoting Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam))); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d

-6-

587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc).

The respondent argues that the Court should not review the petitioner's first claim because habeas review is not appropriate for challenging state post-conviction proceedings, and the remainder of his habeas claims are procedurally defaulted because he did not preserve them properly in the state court, and the state's procedural rule is an adequate and independent basis for denying relief.        The orders cited by respondent did deny relief "under MCR 6.508(D)," but the courts did not cite Rule 6.508(D)(3), which contains the reference to the requirement that post-conviction relief is barred for claims that could have been but were not raised on direct appeal.  The citation to Rule 6.508(D) alone is not sufficient.  *Guilmette v. Howes*, 624 F.3d 286, 289 (6th Cir. 2010) ("Brief orders citing Michigan Court Rule 6.508(D) are not explained orders invoking a procedural bar.").  Therefore, this Court must "look through" the unexplained orders of the Michigan appellate courts to the decision of the state trial court to determine the basis for the denial of state post-conviction relief.  *Id.* at 291.  The trial court did not base its decision on an independent and adequate state procedural ground for denying the petitioner relief.  Additionally, the procedural default rule is not a jurisdictional bar to review of the merits of an issue, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  For both of these reasons, the Court will proceed to the merits of the petitioner's claims.

A.

-7-

The petitioner first argues that the state trial court erred in applying Michigan Court Rule 6.508(D)(3)(a) to the review of the petitioner's claims in deciding his motion for relief from judgment.  The petitioner argues that because he asserted in his motion that he was actually innocent, the trial court should have instead applied Rule 6.508(d)(iv), which allows a court to waive the "good cause" requirement of Rule 6.508(D)(3)(a) upon a showing of a "significant possibility" that the defendant is innocent of the crime.

A federal habeas corpus petition cannot be used to challenge a state's scheme of post-conviction relief.  *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001).  "[S]tates have no constitutional obligation to provide post-conviction remedies," and a petition for a writ of habeas corpus generally is not the proper means to challenge a state court's scheme of post-conviction relief. *Ibid.* (citing *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987); *Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986)).  Any error by the Michigan courts in the application of Rule 6.508(D) to deny the petitioner post-conviction relief is an error of state law that is not cognizable in federal habeas review.  *See Simpson v. Jones*, 238 F.3d 399, 406-07 (6th Cir. 2000).  The petitioner's first claim therefore does not warrant habeas relief.

### B.

The petitioner next argues that his Sixth Amendment rights were violated in two respects when the trial court suppressed evidence of Marcellis Harris's prior convictions during his cross-examination.  First, he says evidence of Harris's prior record would have supported his defense that Harris was the actual shooter, and thus the petitioner's right to present a defense was violated.  Second, he contends that the past convictions would have undermined Harris's credibility, so the petitioner's right under the Confrontation Clause was abridged.  Defense counsel objected on the

-8-

record to the trial court's ruling, arguing that Harris had been convicted previously of carrying a concealed weapon, possession of cocaine, and attempted possession with intent to deliver cocaine, and these prior convictions were relevant to the petitioner's defense that Harris was the perpetrator of the shooting. The trial court held that the petitioner's request to introduce evidence of the prior convictions should be denied because it did not make the defense theory "more probable one way or not." Trial Tr., July 31, 2002, at 167.

The Compulsory Process Clause of the Sixth Amendment provides an accused with the right to "compulsory process for obtaining witnesses in his favor," U.S. Const. amend. VI, a crucial part of the Constitution's more basic guarantee of "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). As applied to the states by the Due Process Clause of the Fourteenth Amendment, the accused has the right at trial to present testimony that is "relevant," "material," and "vital to the defense." *Washington v. Texas*, 388 U.S. 14, 17 (1967); *see also Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" (internal citations omitted)). The "right to present relevant evidence is not unlimited" and "is subject to reasonable restrictions" imposed by the criminal process. *United States v. Scheffer*, 523 U.S. 303, 308 (1998) ("As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' Moreover, we have

found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." (internal citations omitted)).

A violation of the fundamental right to present a defense is not established merely by showing that the trial court excluded evidence relevant to a defense. Rather, a petitioner must show that the exclusion of evidence "significantly undermined fundamental elements of the defendant's defense." *Scheffer*, 523 U.S. at 315. Put another way, the exclusion of evidence is unconstitutionally arbitrary or disproportionate "only where it has infringed upon a weighty interest of the accused." *Id.* at 308 (citing *Rock v. Arkansas*, 483 U.S. 44, 58 (1987)). Applying this standard in a habeas corpus case, the Sixth Circuit has held that the right to present a defense is abridged by an evidentiary ruling excluding defense evidence "[o]nly if 'an evidentiary ruling is so egregious that it results in denial of fundamental fairness.'" *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004) (quoting *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)); *accord Alley v. Bell*, 307 F.3d 380, 394-95 (6th Cir. 2002) (finding that exclusion of evidence unconstitutional only when it eviscerates a defense). Therefore, even if exclusion of evidence was erroneous under state law, the constitutional right to present a defense is not abridged unless the evidence was so material that it deprived the defendant of a fair trial. *Allen v. Howes*, 599 F. Supp. 2d 857, 872 (E.D. Mich. 2009).

The petitioner does not spell out how evidence of Harris's prior record of convictions would prove that he was the shooter in this case, except to suggest that the convictions show that Harris was a violent person by nature. However, it is a fundamental principle of evidence law that "evidence of other crimes to prove the character of a person in order to show action in conformity therewith" is inadmissible. *United States v. Lucas*, 357 F.3d 599, 604 (6th Cir. 2004). Offering evidence that Harris was convicted of violent crimes in order to prove that he committed a violent

-10-

act on the day of the crime unquestionably would violate that rule. The petitioner also argues that the evidence should have been received for a non-character purpose under Michigan Rule of Evidence 404(b). But he has not articulated a reason other than propensity that was presented to the trial judge. The petitioner's right to present a complete defense was not abridged.

The petitioner additionally argues that his right under the Confrontation Clause was violated when he was prevented from cross-examining Marcellis Harris about his prior convictions. The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "[T]he Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas,* 380 U.S. 400, 403 (1965). The Confrontation Clause promotes reliability in criminal trials by providing defendants the opportunity for cross-examination. *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987); *see also Stevens v. Bordenkircher*, 746 F.2d 342, 346 (6th Cir. 1984). The rights of confrontation and cross-examination "have ancient roots," which the "Court has been zealous to protect . . . from erosion." *Pointer*, 380 U.S. at 404-05 (quoting *Greene v. McElroy,* 360 U.S. 474, 496-97 (1959)). Cross-examination has been described as "the greatest legal engine ever invented for the discovery of truth." *California v. Greene*, 399 U.S. 149, 158 (1970) (citation and internal quotations omitted).

The Sixth Circuit has held consistently that although cross-examination is a necessary component to the preservation of an accused's rights under the Confrontation Clause, the right to cross-examine is not limitless. *Stewart v. Wolfenbarger,* 468 F.3d 338, 347 (6th Cir. 2006). When a trial judge allows but limits cross-examination, "the key inquiry is 'whether the jury had enough

-11-

information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory.'" *Id.* at 348 (quoting *Dorsey v. Parke,* 872 F.2d 163, 167 (6th Cir. 1989)). The pivotal point, according to the Sixth Circuit, is whether "the defense is not allowed to plac[e] before the jury *facts* from which bias, prejudice or lack of credibility of a prosecution witness might be inferred." *Dorsey*, 872 F.2d at 167 (alteration and emphasis in original) (internal quotation marks omitted). "[I]t is the state's prerogative to define what evidence is relevant to the case in the first place." *Miskel v. Karnes*, 397 F.3d 446, 452 (6th Cir. 2005) (citing *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979)). The Sixth Amendment's Confrontation Clause guarantees the accused the right to cross-examine adverse witnesses to uncover possible biases and expose the witness's motivation for testifying. *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974). On the other hand, a violation of the Confrontation Clause is subject to harmless error review. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (holding that a restriction on a defendant's right to cross-examine a witness for bias in violation of the Sixth Amendment Confrontation Clause is subject to harmless error review).

Whether addressed as a violation of the right to present a defense or the right to confront a witness, the Court must determine whether the curtailment of the petitioner's cross-examination of Marcellis Harris "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993); *Fry v. Pliler*, 551 U.S. 112, 120-21 (2007). The Court has no trouble concluding that it did not.

At trial, Harris testified that he had known the victim since the sixth grade, they were like cousins, their families were close, and Harris saw the victim several times every week. Trial Tr., July 31, 2002, at 5-7. His testimony regarding his close relationship with the victim was

-12-

corroborated by the victim's mother and father, who testified that Harris had been friends with the victim since their childhood. *Id.* at 176, 192. After the shooting, Harris drove the victim to the hospital and stayed there with him and met with his family members. *Id.* at 15. He told the victim's father that the petitioner was responsible for the shooting, and that he would take revenge. *Id.* at 36-40. Eventually, the victim's mother persuaded him to go the police instead. *Id.* at 41-42. The theory that Harris shot his close friend twice, drove him to the hospital, and immediately identified the petitioner as the shooter to the family would not have been substantially aided by evidence that Harris had been convicted of felonies in the past. This is particularly true because the petitioner did not proffer any sort of connection between the facts surrounding Harris's convictions and the instant offense, or any connection between the past convictions and the victim.

Moreover, the defense theory was adequately conveyed to the jury by the permitted cross-examination of Harris. The fact that Harris had possessed a gun and had been convicted of a crime in the past was known by the jury. *Id.* at 62-63. Defense counsel was allowed to elicit from Harris that he had been arrested with a nine-millimeter handgun, the same caliber as one of the weapons used in the present shooting, and that he lied about his identity to the police. *Id.* at 63-65. Defense counsel was only precluded from presenting evidence that the possession of the handgun resulted in a conviction. Defense counsel also elicited from Harris that he was on probation at the time he arrested for possessing the gun. *Id.* at 65. Because the jury was informed that Harris had possessed a nine-millimeter handgun, he was on probation, and he lied to the police when he was arrested with the handgun, the prohibition of evidence that he had been convicted of other offenses did not have a substantial impact on the outcome of the petitioner's trial. The petitioner is not entitled to habeas relief on this claim.

C.

The petitioner argues that he was deprived his constitutional right to confrontation when a supervisor, rather than the medical examiner who performed the autopsy on the victim, testified regarding the autopsy results and the postmortem report.

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that certain out-of-court statements are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross-examination, even if the trial court finds the statements to be otherwise reliable. 541 U.S. at 68. The Supreme Court has held that the Confrontation Clause applies only to out-of-court statements that are "testimonial" in nature. *See Whorton v. Bockting*, 549 U.S. 406, 419-20 (2007) (explaining that, under *Crawford*, the Confrontation Clause has no application to non-testimonial out-of-court statements); *Davis v. Washington*, 547 U.S. 813, 821 (2006) ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.").

The *Crawford* court did not define "testimonial," but it "provided examples of those statements at the core of the definition, including prior testimony at a preliminary hearing, previous trial, or grand jury proceeding, as well as responses made during police interrogations." *United States v. Saget*, 377 F.3d 223, 228 (2d Cir. 2004); *see Crawford*, 541 U.S. at 51-52. In *Davis v. Washington*, the Court explained that "[s]tatements are . . . testimonial when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822; *see also Miller v. Stovall*, 608 F.3d 913, 924 (6th Cir. 2010) (stating that

-14-

"[t]he proper inquiry . . . is whether the declarant intends to bear testimony against the accused [which] in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime" (quoting *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004)). Laboratory reports qualify as "testimonial statements." *Melendez-Diaz v. Massachusetts*, 557 U.S. ---, 129 S. Ct. 2527, 2532 (2009).

Nonetheless, a violation of the Confrontation Clause can be harmless error. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). In a habeas proceeding, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).

The autopsy and postmortem report were testimonial statements. However, the petitioner has failed to demonstrate how his inability to cross-examine the pathologist who performed the autopsy adversely affected the outcome of the trial. The cause of death of the victim was not disputed at trial. The petitioner failed to explain how cross-examination of Dr. Mills would have supported his defense that he did not shoot the victim, and it is difficult to image how such a cross-examination would have been useful to his defense. The petitioner is not entitled to habeas relief based on this claim.

D.

The petitioner alleges that the prosecutor made an improper appeal to the jury's civic duty during closing argument. In his closing arguments, the prosecutor argued that "it is never too late to do the right thing" and asked the jury to send a message to Marcellis Harris that "he did the right thing" by going to the police rather than seeking revenge on his own. Trial Tr., Aug. 1, 2002, at 52-

-15-

53. The prosecutor also made reference to the assassinations of Dr. Martin Luther King, Jr. and John F. Kennedy when he discussed the required amount of premeditation and deliberation required for first-degree murder.  *Id.* at 71-72.  Additionally, the prosecutor made reference to the fact that the victim had a mother who was now without a son, and he had son that was now without a father.  *Id.* at 47.

A prosecutor may not make remarks to incite the jury's emotions that are irrelevant to the facts.  *Viereck v. United States*, 318 U.S. 236, 247-48 (1943).  However, "[u]nless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not per se impermissible."  *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001) (quoting *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991)).  "[A] prosecutor illicitly incites the passions and prejudices of the jury when he calls on the jury's emotions and fears — rather than the evidence — to decide the case."  *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008).  The Sixth Circuit has stated that the type of appeal to the jury that is improper is one where the prosecutor urges the jury to send a message to other potential criminals in the community by convicting the defendant.  *United States v. Ghazaleh*, 58 F.3d 240, 246 (6th Cir. 1995) (citing *United States v. Johnson*, 968 F.2d 768 (8th Cir. 1992), *United States v. Solivan*, 937 F.2d 1146 (6th Cir. 1991)).

Although the prosecutor's argument that the jury should send a message to Harris that he did the right thing by not taking the law into his own hands was irrelevant to the facts of the case, it cannot be found on the present record that the argument was intended to "arouse the jury's passions or prejudice."  Rather, it stood as a response to the defense's theory that Harris was the perpetrator of the crime, and his failure to name the petitioner as the shooter during his initial contact with the

police tended to show that his identification of the petitioner was false.  In context, the prosecutor's argument that Harris eventually "did the right thing" was intended to infer that Harris lied to the police for reasons other than those asserted by the defense.  The prosecutor's rhetorical argument that the jury should convict the petitioner in order to send a message to Harris that he did "do the right thing" was not a proper basis for seeking a conviction, but in light of the context in which the argument was made — offering the jury a reason why Harris initially lied to the police — the argument was not so inflammatory so as to render the petitioner's trial unfair.  *See Durr v. Mitchell*, 487 F.3d 423, 441 (6th Cir. 2007).

Likewise, it was permissible for the prosecutor to comment on the relatively short period of premeditation required under Michigan law to satisfy that element of first-degree murder.  *See People v. Gonzalez,* 468 Mich. 636, 641, 664 N.W.2d 159, 163 (2003).  The prosecutor referenced the assassinations of President Kennedy and Dr. Martin Luther King, Jr. as examples of planning that far exceed the minimum amount of reflection required to constitute premeditation under Michigan law.  These comments did not call upon the jury's emotions and fears to decide the case.

Finally, the prosecutor's reference to the surviving members of the victim's family did not render the petitioner's trial unfair.  The Sixth Circuit has stated that comments that evoke sympathy for the family of a victim do not meet the stringent standard necessary for reversal of a conviction on habeas review if they "were relatively isolated, were not extensive, and were only a small part of a closing argument that focused heavily on summarizing the evidence presented at trial."  *Byrd v. Collins*, 209 F.3d 486, 532 (6th Cir. 2000).  The prosecutor's remarks were all of these, and therefore do not warrant reversal of the petitioner's conviction.

-17-

For the reasons stated above, the petitioner is not entitled to habeas relief on the basis of the prosecutor's allegedly improper closing argument.

E.

The petitioner next argues that he was denied effective assistance of counsel when his attorney failed to investigate and interview alibi witnesses and interfered with the defendant's right to testify in his own defense.  In denying the petitioner's motion for relief from judgment on this claim, the trial court found that the petitioner had not shown that his counsel was aware of such witnesses or that "the purported alibi witnesses could . . . provide an effective alibi."  *People v. Ramsey*, No. 01-012708, slip op. at 4 (Wayne Cnty. Cir. Ct. Oct. 11, 2006).

To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  Defense counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Id.* at 691; *see also Wiggins*, 539 U.S. at 524-29 (holding that the abandonment of an investigation at an unreasonable juncture may prevent counsel from making an informed strategic decision); *Towns*, 395 F.3d at 258.  This duty includes an obligation to investigate all witnesses who may have information concerning a defendant's guilt or innocence.  *Towns*, 395 F.3d at 258.   Failure to call a known alibi witness generally constitutes ineffective assistance of counsel.  *Bigelow v. Williams*,

-18-

367 F.3d 562, 569 (6th Cir. 2004). Courts give considerable deference to counsel's reasonable strategic decisions. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).

The petitioner has not satisfied either the defective performance or the prejudice components of an ineffective assistance of counsel claim. The trial court found — reasonably, based on the evidence in the present record — that trial counsel never was made aware of the alibi witnesses or the petitioner's claimed absence from the scene of the crime. In the absence of a failure to investigate, which is not established by the record, there can be no defective performance when defense counsel does not present an alibi defense because he was not made aware of it.

Nor has the petitioner established prejudice by the failure to present an alibi defense, which is of questionable validity. The petitioner now alleges that he was with his girlfriend and his girlfriend's mother on the evening of the shooting. He supports his contention with the purported affidavit of Beatrice Taylor. Pet. App. II. The affidavit states that Taylor called the petitioner on his cell phone at around 5:30 p.m. on the evening of the shooting. The petitioner told Taylor that he was with his girlfriend at her mother's house. Taylor asked the petitioner for a ride, and she states that the petitioner and his girlfriend picked her up in his vehicle between 6:30 and 6:45 p.m., and dropped her off between 7:10 and 7:15 p.m. Although the affidavit does not say so, the petitioner contends that these events occurred in Flint, and it was physically impossible for him to have committed the shooting in Highland Park at 8:00 p.m. The affidavit alleges that Taylor sat through the trial but was told by defense counsel that her testimony would not be needed.

There are several problems with the petitioner's claim. First, the petitioner has attached to his petition correspondence he wrote to his appellate counsel that undermines the credibility of the claims he raises today. In his letter dated October 26, 2003, the petitioner asked his appellate

-19-

counsel to consider raising an ineffective assistance of counsel claim based on his trial counsel's failure to investigate the possibility of calling any eyewitnesses at trial, and for having the petitioner testify in his own defense. Nowhere in the letter did the petitioner state that he had alibi witnesses who were not called. It is difficult to believe that if the petitioner indeed was with his girlfriend, her mother, and Taylor on the evening of the shooting, and that Taylor was present at trial and willing to testify, the petitioner would not have mentioned this obvious fact in his letter to his appellate counsel.

Additionally, the petitioner's purported alibi defense is by no means airtight. The petitioner alleges that the shooting occurred at 8:00 p.m. and Taylor avers that she was dropped off by him in Flint at 7:15 p.m. The medical examiner testified that the victim was admitted to the hospital at 8:00 p.m, Trial Tr., July 31, 2002, at 231, but that time was contradicted by the testimony of the police officer who responded to the shooting who testified that he was dispatched to the scene at 9:00 p.m, *id.* at 215, 221. Taylor states that she may have been dropped off as early as 7:10 p.m., and the trial evidence shows that the shooting may have occurred much closer to 9:00 p.m. Even assuming the petitioner was in Flint as late as 7:10 p.m., he would have had ample time to drive to Detroit if the shooting occurred sometime after 8:00 p.m.

There are additional problems. The petitioner has not explained why he was able to obtain an affidavit from only Taylor but not from his girlfriend or her mother, the two main people he contends to have been with on the evening of the shooting. The petitioner has also not explained why he was not able to obtain Taylor's affidavit until November 2004, when he would have known about her importance at the time of his August 2002 trial. Taylor does not explain in her affidavit how she is able to remember specific time-frames from an unremarkable evening occurring over two

-20-

years previously.  Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief.  *See, e.g., Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998); *see also Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991) (finding that "bald assertions and conclusory allegations" do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings).

For all of these reasons, the petitioner has not demonstrated that he had a substantial alibi defense that his counsel failed to present at trial.  The state trial court's decision that the petitioner did not demonstrate ineffective assistance of counsel on this basis was therefore not objectively unreasonable.

The petitioner also claims that his counsel interfered with his right to testify in his own defense.  The trial court considered and denied this claim on the merits when it denied the petitioner's motion for relief from judgment.  All criminal defendants have a constitutional right to testify on their own behalf.  *Rock v. Arkansas*, 483 U.S. 44, 49 (1987).  This right is personal to the defendant and may be relinquished only by the defendant.  *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993).  "[R]elinquishment of the right must be knowing and intentional."  *Ibid.*  Defense counsel's role is to advise the defendant whether to testify, but the ultimate decision is for the defendant to make.  *United States v. Hover*, 293 F.3d 930, 933 (6th Cir. 2002).  However, "when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed."  *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000).

> This is so because the defendant's attorney is presumed to follow the professional rules of conduct and is 'strongly presumed to have rendered adequate assistance' in carrying out the general duty 'to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution.' *Strickland v. Washington*, 466 U.S. 668, 688-90 (1984).

*Ibid.* (footnote omitted).

The state trial court concluded that the defendant failed to demonstrate that he was entitled to relief on this claim because the record did not disclose what advice defense counsel may have given the petitioner regarding his decision to testify, and the petitioner neither claimed that he was ignorant of his right to testify nor divulged what testimony he would have provided had he testified. That conclusion was a reasonable determination of the facts and a proper application of the performance component of *Strickland*. Because the record is void of any indication by the petitioner that he disagreed with counsel's advice that he should not testify, the petitioner has not overcome the presumption that he willingly agreed to counsel's advice not to testify or that his counsel rendered ineffective assistance of counsel. *Gonzales v. Elo*, 233 F. 3d 348, 357 (6th Cir. 2000). The adjudication of this claim by the state trial court was not objectively unreasonable. The petitioner is not entitled to habeas relief on this claim.

F.

The petitioner next argues that he was denied the effective assistance of appellate counsel because his appointed appellate attorney failed to raise on direct appeal what are now his habeas claims. For the reasons stated above, the petitioner has failed to show that the claims his appellate counsel did not raise have merit. The petitioner therefore is unable to establish that appellate counsel was ineffective for failing to raise these claims on his appeal of right. *See Johnson v. Smith*, 219 F. Supp. 2d 871, 883 (E.D. Mich. 2002).

G.

The petitioner next claims that the cumulative effect of the alleged errors rendered his trial fundamentally unfair in violation of due process. The cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief because there is no clearly

-22-

established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005). Therefore, the petitioner is not entitled to habeas relief on the grounds of cumulative error.

### H.

The petitioner last argues that none of his claims are barred from review based on any state court procedural default because he has demonstrated his actual innocence. In support of this claim, the petitioner has attached to his petition the purported affidavit of Gerrell McKay. Pet. App. II. McKay avers that Marcellis Harris told him that Harris shot the victim and blamed the petitioner.

Because the Court has found that none of the petitioner's other claims are subject to procedural default, this claim is moot. However, even if the claim were considered as a free-standing claim of actual innocence, it does not present a ground for granting habeas relief. According to well-established Sixth Circuit precedent, the petitioner faces an insurmountable obstacle in attempting to advance this claim. *See Cress v. Palmer*, 484 F.3d 844, 853-55 (6th Cir. 2007). The Supreme Court has stated that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. . . . [F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution — not to correct errors of fact." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). In *dictum*, the *Herrera* court indicated that an actual innocence claim might be cognizable "if there were no state avenue open to process such a claim." *Herrera*, 506 U.S. at 417. The Supreme Court noted, however, that even if such a claim were cognizable, the threshold showing "would necessarily be extraordinarily high." *Ibid*.

The petitioner makes no such showing.  He offers no new reliable evidence to support a claim of innocence.  McKay's bare-bones affidavit falls far short of the mark.  McKay does not state where, when, or under what circumstances Harris supposedly made this confession of guilt to him. Habeas relief is not warranted on this claim.

III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt # 1] is **DENIED.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  March 2, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 2, 2011

s/Deborah R. Tofil
DEBORAH R. TOFIL